FILED'09 JUN 05 10:14USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRIE CASEY,

     Plaintiff,

         v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

     Defendant.

Civil No. 08-423-CL

**Report & Recommendation**

CLARKE, Magistrate Judge.

     Plaintiff Terrie Casey ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to

obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for Social

Security Disability Insurance (SSDI) benefits.  For the several reasons set forth below, the

decision of the Commissioner should be reversed and the matter remanded for further

proceedings.

**I.**     **Background**

     Plaintiff was injured in a motor vehicle accident in 1998, and a subsequent MRI revealed

a central cervical disc bulge at C4-5.  (Tr. 179-80.)  Plaintiff underwent two cervical surgeries in

1999 for her injuries.  The surgeries included anterior cervical discectomy, foraminotomy, and

Report & Recommendation 1

neural decompression and interbody fusion at C4-5 and C5-6. (Tr. 16, 179.) She was diagnosed with chronic pain in 2003. (Tr. 171.)

In April of 2004 Dr. Ginocchio performed a neurological exam. He found Plaintiff had "persistent deviation of her neck with approximately 5-10 degrees of left torticollis," and he suspected that cervical dystonia was responsible for the constant pressure and tension in her neck and back of head. (Tr. 181.) Dr. Ginocchio reexamined Plaintiff in May and stated, "I think it is safe to say that the bulk of her symptoms are related to the cervical radiculopathy and some cervical dystonia." (Tr. 176.) Plaintiff was unwilling to undergo more surgery, and Dr. Ginocchio concluded that she should pursue a conservative pain management approach. (Tr. 176.)

On July 28, 2004, Plaintiff's physician Dr. Balog noted that though the Botox injections produced some relief, Plaintiff's neck stiffness gradually returned after two weeks. (Tr. 191.) He saw Plaintiff again in January 2005 and found that she had a slight shoulder drop on the right with diminished grip strength of 2/5 on the right and 3/5 on the left. (Tr. 426.) A month later, Dr. Balog noticed diminished grip strength on the right, now of 3/5, and of 4/5 on the left. He diagnosed her with intermittent cervical radiculitis and cervical spondylosis with myelopathy. (Tr. 412.) In March 2005, Dr. Balog stated that the steroid injections provided up to 6 months of relief but Plaintiff was still demonstrating diminished strength bilaterally. (Tr. 409.)  In April 2005, he reviewed her cervical MRI and noted that significant scarring was limiting the spread of medication. (Tr. 407.) In July of that year, he noted point tenderness along the right trapezius and neck and confirmed that the frequency of her headaches remained unchanged although their intensity had improved. (Tr. 391.) In October 2005, he noted that an x-ray revealed mild joint

spur formation narrowing the foramen mildly at C3-4.  (Tr. 355.)  In November 2005, Plaintiff

had pulmonary functioning testing that showed obstructive lung disease of mild to moderate

physiologic severity.  (Tr. 343.)

Plaintiff filed for a period of disability and SSDI on February 18, 2004.  She appeared and

testified at a hearing on February 20, 2007 before an Administrative Law Judge ("ALJ") and

amended her disability onset date from January 1, 1999 to January 1, 2004.

An independent medical examiner and a vocational expert ("VE") also appeared and

testified.  On June 7, 2007, the ALJ issued her decision that Plaintiff was not disabled.  The

Appeals Council denied Plaintiff's request for a review on February 4, 2008.  (Pl.'s Br. 1-2; tr. 5.)

## II.    Standards

This Court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole and weighs

"both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez

v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than

one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v.

Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts

in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858

n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the

record and supported by substantial evidence. Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## III.    Commissioner's Decision

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 1, 2004. (Tr. 23.)

Report & Recommendation 4

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that Plaintiff has severe impairments of post cervical spine surgery pain syndrome, torticollis in her neck, and mild respiratory dysfunction. (Tr. 16.) Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet, or medically equal to, any of the listed impairments. (Tr. 17.)

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform her "past relevant work." 20 C.F.R. § 404.1560(a). The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. SSR 96-8p. "Past relevant work" refers to work that "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). It does not consider "off-and-on" work during that period. Id. If she can perform past relevant work, then the Commissioner finds the claimant "not disabled." If the claimant cannot perform

Report & Recommendation 5

past relevant work, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The ALJ found that the Plaintiff has the following exertional and nonexertional

limitations:

> She is able to read, write, add and subtract. She is right hand dominant. She is able to sit a total of 8 hours during a fulltime 8-hour workday, but should be allowed to move and stretch at least every 30 minutes. She is able to stand 8 hours during a fulltime 8-hour workday. She is able to walk 8 hours during a fulltime 8-hour workday. She is able to lift and/or carry 10 pounds frequently (i.e. up to two-thirds of the workday) and 20 pounds occasionally (i.e. up to one-third of the workday). She should avoid reaching above shoulder level, concentrated exposure to humidity and dust, driving, climbing, turning her heard frequently as part of her job duties or holding her head in a static position greater than 20 minutes at a time. She should avoid bending, except to pick up something she has dropped. She should avoid repetitive (i.e. two-thirds or more of the workday) use of her hands as in typing, but simple grasping is not limited. She can concentrate on simple 1-2-3 step tasks, but must avoid complex tasks. These limitations are consistent with the record and Dr. DeBolt's testimony.

(Tr. 20.) Plaintiff's past relevant work experience includes home health aid, certified chiropractic

assistant, receptionist, and billing clerk. The VE testified at the hearing that these positions

exceed her current residual functional capacity. (Tr. 20.) The ALJ found that the Plaintiff cannot

perform past relevant work. (Tr. 20.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the

claimant is deemed disabled. Here, the ALJ determined that there are jobs that exist in

significant numbers in the national economy that the Plaintiff can perform. (Tr. 20.) She

determined that the Plaintiff was not disabled. (Tr. 21.)

## IV.    Discussion

Report & Recommendation 6

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and because it is based on the application of improper legal standards. Plaintiff argues that:

(1)    the ALJ erred by not finding Plaintiff's impairments of cervical radiculopathy and headaches to be severe

(2)    the ALJ improperly found Plaintiff's testimony not entirely credible

(3)    the ALJ improperly rejected a lay witness statement

(4)    the ALJ failed to rely upon a complete and proper hypothetical and erred by relying on erroneous vocational testimony.

**A.    ALJ Improperly Concluded that Plaintiff's Cervical Radiculopathy Condition Was a Non-Severe Impairment**

Plaintiff argues that the ALJ erred in not finding that her cervical radiculopathy a severe impairment. (Pl.'s Br. 8.)  The ALJ concluded that cervical radiculopathy, along with anemia, hyperlipidemia, hypothyroidism, and ear pain, only caused "transient and mild symptoms and limitations or otherwise not adequately supported by the medical evidence in the record" and was not severe. (Tr. 17.)  The ALJ did not discuss Plaintiff's alleged headaches.  An impairment is not severe

> when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

SSR 85-28 *3 (1985) (see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988); Smolen v.

Report & Recommendation 7

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).  The ALJ stated that her opinion was consistent

with expert medical testimony from Dr. DeBolt.  She also stated that Dr. DeBolt's opinion was

"generally consistent with the record as a whole."  (Tr. 19.)

Controlling weight will be given to a treating physician's opinion on the issues of the

nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence" in the case record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "The

treating physician's opinion is not, however, necessarily conclusive as to either a physical

condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,  751 (9th Cir.

1989) (citing  Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§

404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir.

1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's

opinion, and that opinion is not contradicted by another doctor, he must set forth clear and

convincing reasons for doing so.  Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v.

Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).  If a treating or examining physician's opinion is

contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons,

based on substantial evidence in the record, for disregarding the opinion of the treating or

examining physician.  Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th

Cir. 1996).  The ALJ can meet this burden by setting out a detailed and thorough summary of the

facts and conflicting medical evidence, then stating his interpretation, and lastly making findings.

 Cotton, 799 F.2d at 1408; Rodriguez, 876 F.2d at 762.  "The opinion of a nonexamining

Report & Recommendation 8

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F. 3d at 831.

The ALJ determined that Plaintiff's cervical radiculopathy was not a severe impairment, relying primarily on the expert medical testimony of Dr. DeBolt for her conclusion. She summarized the Plaintiff's symptoms: "[t]he claimant has been treated or evaluated for other symptoms and complaints that appear periodically throughout the record. . . . these alleged impairments, considered singly or together, have caused only transient and mild symptoms or limitations, or are otherwise not adequately supported by the medical evidence in the record." (Tr. 16-17.)

However, the ALJ does not give reasons for favoring Dr. DeBolt's opinion over Plaintiff's treating doctors, as required. She states simply that her analysis is "consistent with the expert medical testimony of Dr. Debolt," who concluded that radiculopathy was not a severe impairment and that there was insufficient objective evidence to support the diagnosis. (Tr. 17.) At the hearing, Dr. Debolt stated, "It is a subjective determination based upon her symptoms, as elicited by the doctor. If one looks for muscle weakness, atrophy, fasciculation, reflex changes, sensory changes corresponding, this is not in the record." (Tr. 529.)

The Commissioner argues that the ALJ's conclusion is proper because the ALJ is required to consider all of the evidence in the record. (Def.'s Br. 8.) He notes that while Drs. Balog and Ginocchio diagnosed the Plaintiff in 2004, Dr. DeBolt based his conclusion on a longitudinal analysis of the record. (Def.'s Br. 8.) According to the Commissioner, the ALJ did properly disregard treating physician testimony because she gave clear and convincing reasons for her analysis, for example, that the ALJ's conclusion was consistent with Dr. DeBolt's testimony.

Report & Recommendation 9

(Def.'s Br. 8.)

This does not meet the Defendant's burden in properly disregarding a treating physician's opinion. The Court is not convinced that the ALJ based her conclusion on substantial evidence in the record. She did not set out a detailed and thorough summary of the facts, she did not state her interpretation of these facts, and she did not make her findings as required by case law. See Cotton, 799 F.2d at 1408; Rodriguez, 876 F.2d at 762. The ALJ relies on Dr. DeBolt's opinion alone as substantial evidence, which is contrary to what this Court requires. See Lester, 81 F.3d at 831.

The ALJ improperly disregarded the treating physicians' opinions, and accordingly her determination that Plaintiff's cervical radiculopathy is not a severe impairment is in error because it is not based on all the evidence in the record. When appropriately crediting the Plaintiff's physicians, there is sufficient evidence to suggest that Plaintiff has this condition and that it has impacted her life. The Plaintiff's doctors clearly stated that she suffered from cervical radiculopathy and they do not state or describe Plaintiff's limitations as transient or mild. Twice in the record, Dr. Ginocchio gives his opinion that Plaintiff's symptoms were related to this condition. (Pl.'s Br. 10.) On April 22, 2004, he explained that he believed cervical radiculopathy to be the cause of her complaints: "Certainly given her history of two cervical surgeries and her propensity to form scar tissue, [cervical radiculopathy] is the most likely cause of her complaints." (Tr. 181.) On May 13, 2004, he concluded, "the bulk of her symptoms are related to cervical radiculopathy and some cervical dystonia." (Tr. 176.) Dr. Balog diagnosed her similarly several months later in December of 2004. (Tr. 434.)

Plaintiff's medical records reveal diminished strength and weakness, which are consistent

with a diagnosis of radiculopathy.[1]  On October 7, 2003 Dr. Balog reported that she experienced

right triceps weakness. (Tr. 235.) Dr. Ginocchio also reported similarly in April of 2004 and

May of 2004.  (Tr. 181, 176.)  In December of 2004, January 2005 and February 2005 she

demonstrated diminished grip strength.  (Tr. 439, 426, and 412.)

 In light of this evidence, the ALJ's decision that Plaintiff's cervical radiculopathy is not a

severe impairment is in error.  On remand, the ALJ should either determine that this condition is

severe or properly discredit the treating physicians' opinions.

 Plaintiff also alleges that her headaches should also be considered severe impairments.

(Pl.'s Br. 10.)  The ALJ did not acknowledge this condition in her decision.  (See tr. 16-17.)

Plaintiff argues that evidence in the record demonstrates her headaches are related with her

muscle spasms, neck tension, and dystonia.  (See tr. 529 (Dr. Bolt agreed that headaches would

be a common side effect of Plaintiff's past surgeries); 181 (Dr. Ginocchio suspected cervical

dystonia was producing "constant pressure and tension up in her neck up to the back of her

head"); 544 (Plaintiff's own testimony regarding her headaches and muscles spasms along with

the need to take naps at least twice daily).)  Plaintiff argues that her headaches "should be viewed

as a medically determinable impairment." (Pl.'s Br. 11.)  She believes that the non-exertional

limitations of her chronic headaches will not allow her to perform 1-2-3 step tasks as the ALJ

described in her RFC.  (Pl.'s Reply 2.)

 The Commissioner argues that while medical records do confirm that Plaintiff does

---

[1] Medical expert Dr. William Debolt explained during hearing testimony that findings of "muscle weakness, atrophy, fasciculation, reflex changes, sensory changes corresponding" would indicate radiculopathy. (Tr. 529.) Dr. DeBolt continued, however, to state that he did not find objective evidence to suggest this condition in the Plaintiff's record.

Report & Recommendation 11

experience occasional headaches they do not clearly establish that her headaches are a severe impairment. (Def.'s Br. 7.)  The Commissioner cites medical records in which the physicians give a passing reference to the headaches associated to the neck pain or discuss the reduced intensity of the headaches or complete lack of headache symptoms.  (See. tr. 167 (Dr. Farrell noted, "she has increased neck pain and headaches"), 181 (Dr. Balog explained, "she has had significant pain in her neck and headaches since a motor vehicle accident in 1998 . . . her neurological examination today is unremarkable . . . she had a good response to Botox"), 375 (Plaintiff reported more headaches), 391(Dr. Balog noted that her headache frequency "appears to have remained unchanged, though the intensity of her headaches has improved") and 454 (Plaintiff reported "no severe headaches").)

It is not clear from the record whether the headaches pose only a minimal effect on Plaintiff's ability to perform basic work activities.  See SSR 85-28 at *3.  However, her headaches should have been considered in relation to the plaintiff's other severe impairments when making the disability determination.  When the ALJ has found there to be a severe impairment that does not meet or equal those of a listed impairment, the ALJ "will consider the limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining your functional capacity." 20 C.F.R. § 404.1545(e).

The ALJ erred in not considering Plaintiff's headaches when she determined her RFC. On remand, the ALJ should consider the limitations of Plaintiff's headaches, such as the need to rest twice daily, in conjunction with the limiting effects of her severe impairments and other non-severe impairments.  On remand the ALJ should either properly disregard the treating physician opinions or properly credit them.

Report & Recommendation 12

**B.      ALJ Improperly Found Plaintiff's Testimony to Be "Not Entirely Credible"**

The Plaintiff argues that the ALJ improperly found her testimony "not entirely credible" and rejected it. (Pl.'s Br. 11.)   In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis of plaintiff's evidence. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); see also  Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).  First, the ALJ must determine that the claimant has met the threshold test of producing objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. Smolen, 80 F.3d at 1281.  There must be no evidence of malingering.  Id.

Under the second part of the analysis, the Commissioner analyzes the credibility of the claimant's testimony regarding the severity of claimant's symptoms.  Smolen, 80 F.3d at 1281. The Commissioner can reject a claimant's symptom testimony only if he provides clear and convincing reasons for doing so and makes specific findings.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence suggests that the testimony is not credible.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . .  In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of

Report & Recommendation 13

treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

The Ninth Circuit explained that the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once that determination is made, the court defers to the ALJ. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

The Ninth Circuit recognizes that a party claiming disability "should not be penalized for attempting to lead [a] normal [life] in the face of [her] limitations." Reddick, 157 F.3d at 722 (omitted cases cited). "'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir.1987) (quoting Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981)). It is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility. Reddick, 157 F.3d at 722.

As set forth in Smolen, the ALJ can make a credibility determination based on "unexplained or inadequately explained failure to seek treatment" as well as the claimant's daily activities. 80 F.3d at 1284. "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2004).

Report & Recommendation 14

The Commissioner reminds the Court that not all of the ALJ's reasons for discrediting the Plaintiff must be upheld, as long as there is substantial evidence to support the ALJ's determination. (Def.'s Br. 12.) In Batson v. Barnhart, the ALJ's determination was upheld even though the court found one of his reasons for his credibility determination to be unsupported. 359 F.3d at 1197. However, in Batson, the ALJ had already determined the claimant's testimony was not credible because there were contradictions within the testimony and it was unsupported by objective evidence or persuasive reports from his doctors. 359 F.3d 1190, 1197 (9th Cir. 2004). Id.

Plaintiff argues that the ALJ did not provide clear and convincing reasons to reject her testimony. (Pl.'s Br. 12.) The ALJ summarized the Plaintiff's testimony: "[t]he claimant alleges feeling pain in her upper and lower extremities, neck and back. She experiences headaches. She has difficulties lifting and/or carrying weight, walking, standing and sitting. Her mobility is limited. She is fatigued. She experiences shortness of breah and difficulties sleeping." (Tr. 19; see tr. 118-127.) The ALJ concluded, "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credibly." (Tr. 19.)

The ALJ stated four reasons to justify her credibility determination. First, she did not believe that Plaintiff's functional limitations were as limiting as Plaintiff claimed because of her daily activities. Second, she noted that Plaintiff only received conservative treatment. Third, she found in the record that Plaintiff's neck condition had improved and she had not taken Vicodin pain medication since January 2006. And fourth, the record contained no objective findings to

Report & Recommendation 15

support mild respiratory dysfunction. (Tr. 19.)

The ALJ's reasons are not clear and convincing and do not warrant diminishing the Plaintiff's credibility. Plaintiff's daily activities are not inconsistent with her assertions of her limitations. Simply because she is able to perform somewhat routine household tasks does not discredit her testimony. In addition, the tasks that she can perform are not necessarily those that can immediately transfer to the workplace.

The Ninth Circuit clarified how daily activities can inform an ALJ's credibility determination.

> [I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working. . . . The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits. . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Yet, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.

Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff's daily activities, which include watching television, doing some or part of household chores, driving the car, and doing crafts of sewing, are not the type of sustained and exertional activity that regular employment requires. (Pl.'s Br. 12.) Plaintiff clarified that these activities are "not analogous to work activity." (Pl.'s Br. 12.) Further, she is not able to complete many of these tasks, such as sewing and laundry and some of them she performs sporadically, if at all, including gardening and traveling. (Tr. 119, 124-25.)

These activities are not inconsistent with Plaintiff's assertions or with her representations

Report & Recommendation 16

to her doctors regarding her pain. The household chores are brief and limited, such as loading and unloading the dishwasher. She is only able to drive short distances because of the pressure in her neck, and she requires regular rest at least twice a day. (Tr. 546.) At the hearing, Plaintiff explained that she could only stand for two hours of an eight hour work day and could only sit for one hour at a time. She also stated that she did not believe she could sit for more than six hours in an eight hour work day because of the pressure in her neck. These daily limitations put into perspective her daily activities. Overall, they are not the same physical tasks that would be required for sustained employment.

Plaintiff's course of treatment here cannot be used to justify discrediting her testimony. The ALJ became skeptical of Plaintiff's credibility because she had not been hospitalized for any significant period of time. (Tr. 19.) This alone cannot be an indicator of credibility because the ALJ neglected to consider that the Plaintiff has used several methods of treatment in attempts to alleviate her pain.

Plaintiff has taken several oral pain medications, including Vicodin, Flexeril, and Zanaflex. (Tr. 166, 180.) Dr. Balog also noted that scarring from previous surgeries has limited the spread of her pain medication, and he decided that a more conservative treatment would be better. He stated, "I believe that she is better served by conservative and supportive measures which include ongoing Botox injections." (Tr. 407.) It appears that this decision for treatment was related to her body's ability to process the medication, not because her condition only required conservative treatment.

In addition to Botox injections, she received trigger point injections from October 2003 to December 2005 and radiofrequency denervation. (Tr. 191, 201, 213, 227, 237, 340, 354, 365,

Report & Recommendation 17

378, 380, 391, 398, 407, 409, 411, 426.)  Plaintiff also tried physical therapy, although it did not

yield the success she was hoping for.  (Tr. 260, 263-65.)

Given the variety of her treatments, it is apparent that the Plaintiff was seeking remedies

for her pain that would work.  That the ALJ described her treatment as "conservative" and that

Plaintiff had not been hospitalized are not clear and convincing reasons to undermine the

credibility of her subjective complaints.  (Tr. 19.)

The ALJ also noted that the record reveals that the Plaintiff's neck condition has

improved and she has not taken the pain medication Vicodin since January 2006.  (Tr. 19, 466.)

The Plaintiff clarifies, however, that although she was not taking Vicodin she was taking other

medications to combat the pain and treat her muscle spasms.  (Tr. 464; Pl.'s Br. 15.)  Further,

Plaintiff's record documents her difficulty taking oral analgesics because of the side effects,

including "ongoing episodes of nausea and vomiting with even the smallest dose of

hydrocodone."  (Tr. 391.)  Her cessation of using Vicodin cannot suggest that her testimony

regarding her pain is exaggerated in light of the other evidence in the record.

Regarding the improvement of her neck condition, the Plaintiff argues that this should not

diminish her credibility either as it was only a "transitory improvement."  (Pl.'s Br. 15.)  Plaintiff

reminds the Court that the ALJ must evaluate the claimant's ability to work "on a sustained

basis."  20 C.F.R. § 404.1512(a).  In Lester v. Chater, the court explained, "[o]ccasional

symptom-free periods - and even the sporadic ability to work - are not inconsistent with

disability."  81 F.3d 821, 833 (9th Cir. 1996).

Here, the Plaintiff's improvement was short lived.  (Tr. 407.)  Within two weeks of her

Botox injections, the pain usually returned.  (See tr. 191.)  Plaintiff also testified at the hearing

Report & Recommendation 18

about the muscle spasms that continued in her hands, precluding her from even sporadic work. (Tr. 540-545.) Given the court's guidance in <u>Lester</u>, which explained that symptom-free periods should not unilaterally preclude disability, the ALJ improperly used Plaintiff's "transitory improvement" as clear and convincing evidence to discredit her credibility.

Lastly, the ALJ takes issue with Plaintiff's credibility as it relates to the limitations caused by her mild respiratory dysfunction. (Tr. 19.) However, the record demonstrates that the Plaintiff does, in fact, suffer from the condition. (Tr. 343.) On November 28, 2005, Dr. Zbinden interpreted Plaintiff's pulmonary function testing: "[o]bstructive lung disease of mild physiologic severity and an overall physiologic profile most consistent with airways disease." (Tr. 343.) Dr. Farrell noted that Plaintiff's wheezing and shortness of breath are worse with exertion and prescribed the medication Abuterol in November 2005, although Plaintiff reported that this medication did not help her condition in March of 2006. (Tr. 468, 464.) Further, the Court finds it inconsistent that the ALJ classified this condition as a severe impairment and then uses it as a reason to discredit Plaintiff's testimony. (Tr. 16, 19.)

The ALJ has not provided clear and convincing reasons to discount the Plaintiff's credibility.

## C.    ALJ Improperly Rejected Lay Witness Testimony

Plaintiff argues that the ALJ improperly discredited lay witness testimony. Social security regulations explain that the Commissioner will consider non-medical sources to evaluate the severity of the impairment, such as testimony from spouses and other family members. 20 C.F.R. § 404.1513(d)(4). In <u>Sprague v. Bowen</u>, the court found that testimony of claimant's daughter and friend is fully competent to substantiate the doctor's diagnosis. The court

concluded, "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. . . . Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." 812 F.2d 1226, 1232 (9th Cir. 1987) (citing 20 C.F.R. § 404.1513(e)(2)).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996)).  In evaluating lay witness opinions, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p at *6.

In Greger v. Barnhart, the court affirmed the ALJ's decision to reject lay witness testimony.  The ALJ concluded that the witness statements were inconsistent with claimant's presentations to his doctors and noted the witness's "close relationship," which may have influenced her desire to help the claimant. The court concluded, "[t]he ALJ's reasons for doubting [the witness's] credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony." 464 F.3d 968, 972 (9th Cir. 2006).

However, the court in Dodrill v. Shalala clarified that lay witness testimony has its place in the ALJ's decision when the witness can provide independent observations:

> [t]hat the ALJ dismissed all the lay witness testimony solely because he found that the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the

> claimant's pain and other symptoms. . . . An eyewitness can often tell whether
> someone is suffering or merely malingering.  While this is particularly true of
> witnesses who view the claimant on a daily basis, the testimony of those who see
> the claimant less often still carries some wait.  If the ALJ wishes to discount the
> testimony of the lay witnesses, he must give reasons that are germane to each
> witness.

12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff argues that the ALJ improperly considered "with caution" lay witness testimony

from Plaintiff's husband James Casey.  (Pl.'s Br. 16.)  The ALJ reviewed Mr. Casey's statements

and concluded "because Mr. Casey has a personal relationship with the claimant and lacks the

expertise and possibly motivation to offer an objective or functional assessment, his statements

regarding the claimant's symptoms and limitations are considered with caution." (Tr. 18.)

Mr. Casey provided his opinion in the in the SSA's Function Report - Adult Third Party

completed on May 16, 2004, and in a witness statement dated February 16, 2007.  (Tr. 128-37;

154-55.)  At both times, Mr. Casey discussed his wife's conditions, which he observed on a daily

basis, and how it has impacted both of their lives.  He described her limitations in comparison to

her life prior to the onset of her conditions.

> Terrie used to be much more active than she is now – gardening cooking, and
> baking from scratch, doing all of the household shopping and housekeeping,
> crocheting, sewing, and doing embroidery while holding down employment.  Due
> to her impairments, Terrie had to give up working in her beautiful rose garden –
> which used to be her main hobby.  Now she does not take on any projects because
> she is worried she will not be able to complete them due to her limitations.

(Tr. 156.)  He described how her limitations affected her ability to cook and take family

vacations.  He states that she cannot sit in the car longer than an hour without feeling numb, she

requires regular nintey minute naps each day, cannot walk more than two blocks without needing

rest, and she has difficulty gripping objects in her hands that results in dropping items on a

Report & Recommendation 21

regular basis. (Tr. 155.)

The ALJ has not provided reasons germane to this witness to properly discredit his testimony. His conclusory statements about lack of expertise and the personal relationship are not sufficient, especially since the court has held that lay witnesses are competent to testify when they are in the position to observe the claimant on a daily basis. See Sprague, 812 F.2d at 1232.

Unlike the witness in Greger, Mr. Casey's statements are not inconsistent with the Plaintiff's own statements or representations to her physicians. Plaintiff described her diminished ability to participate in her hobbies of family gatherings, gardening, traveling, and sewing. (Tr. 119.) Mr. Casey regularly witnessed his wife's activities and is well suited to give an independent observation as to how her impairments have affected her life. The ALJ's reasons for treating Mr. Casey's opinion "with caution" is not germane to this witness.

**D.    ALJ's Hypothetical to the Vocational Expert Was in Error and ALJ's Reliance on the VE Testimony Was in Error**

The Plaintiff argues that the ALJ failed to pose and rely upon a complete and proper hypothetical that included all of Plaintiff's exertional and non-exertional limitations. (Pl.'s Br. 17.) The ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The assumptions in the hypothetical question must be supported by substantial evidence. Id. The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p. A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). The hypothetical must precisely and comprehensively set out every physical and

Report & Recommendation 22

mental impairment of the applicant that the ALJ accepts as true.  "Substantial evidence may be

produced through reliance on the testimony of a vocational expert in response to a 'hypothetical

question' but only 'if the question accurately portrays the [plaintiff's] individual physical and

mental impairments." Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir.

1987) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3rd Cir. 1984).

> The ALJ found that Plaintiff had the following exertional and non-exertional limitations:
>
> She is able to read, write, add and subtract.  She is right hand dominant.  She is
> able to sit a total of 8 hours during a full-time workday, but should be allowed to
> move and stretch at least every 30 minutes.  She is able to stand 8 hours during a
> fulltime work day.  She is able to walk 8 hours during a fulltime workday.  She is
> able to lift and/or carry 10 pounds frequently (i.e. up to two-thirds of the workday)
> and 20 pounds occasionally (i.e. up to one-third of the workday).  She should
> avoid reaching above shoulder level, concentrated exposure to humidity and dust,
> driving climbing, turning her head frequently as part of her job duties or holding
> her head in a static position greater than 20 minutes at a time.  She should avoid
> bending, except to pick up something she has dropped.  She should avoid
> repetitive (i.e. two-thirds or more of the workday) use of her hands as in typing,
> but simple grasping is not limited.  She can concentrate on simple 1-2-3 step
> tasks, but must avoid complex tasks.

(Tr. 20 & 557.)

The Plaintiff argues that the hypothetical to the VE does not incorporate all of her

limitations, specifically those related to her cervical radiculopathy condition, her need to take

frequent naps due to her neck pain, and her limited ability to concentrate because of muscle

spasms and headaches.  (Pl.'s Br. 18.)  Plaintiff also argues that the jobs suggested by the VE

contradict the Dictionary of Occupational Titles ("DOT") because the positions of office helper,

production worker, and packing line worker each require frequent fingering.   Plaintiff argues

that "fingering" is closely related to "typing," which the ALJ determined the Plaintiff should

avoid.  Because Plaintiff should avoid typing, she believes that she should also avoid jobs that

require the similar action of "fingering." Plaintiff argues that because the ALJ did not provide persuasive evidence to support this deviation, the ALJ relied on erroneous testimony to make the decision of not disabled. (Pl.'s Br. 19.)

The Commissioner argues that the ALJ's hypothetical is proper because it is based on substantial evidence in the record. (Def.'s Br. 17.) See Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that relfects each of the claimant's limitations.").

The Court has reviewed the record and determined that the ALJ improperly dismissed physician opinions, plaintiff testimony, and lay witness testimony. Consequently, the hypothetical based on these findings is not substantial evidence, and relying on it is in error. When witness testimonies are properly credited, the RFC will necessarily change, as will the accompanying hypothetical to the VE. When a complete hypothetical is again issued to the VE, the ALJ should also be required to clarify whether "frequent fingering" is the same as "frequent typing" and whether the Plaintiff's RFC should include either.

## V.    Conclusion

This decision should be reversed and remanded. The ALJ's decision is not based on substantial evidence or correct legal standards. The ALJ improperly rejected physicians' opinions in determining that Plaintiff's cervical radiculopathy was not a severe impairment. She also failed to take Plaintiff's headaches into consideration when evaluating her RFC. The ALJ improperly discredited Plaintiff's testimony and that lay witness Mr. Casey, Plaintiff's husband. The ALJ's RFC is not based on substantial evidence in the record making her hypothetical to the VE improper.

Report & Recommendation 24

## VI.    Recommendation

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded for further administrative proceedings. The ALJ should:

(1)    complete a proper evaluation of Plaintiff's impairments of cervical radiculopathy and headaches.  If the ALJ rejects the treating physicians' opinions, she should do so properly by giving clear and convincing reasons.  The ALJ should consider the limiting effects of Plaintiff's severe and non-severe limitations in creating the RFC.

(2)    credit the Plaintiff's testimony or provide clear and convincing reasons to discredit it and making specific findings.

(3)    credit Mr. Casey's lay witness testimony or give specific and legitimate reasons germane to him to disregard it.

(4)    revise the Plaintiff's RFC and hypothetical for the VE to include all of Plaintiff's limitations, consistent with new determinations of impairments.  The ALJ should also clarify whether Plaintiff is able to perform frequent fingering.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by **June 22, 2009.**  If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the

Report & Recommendation 25

factual issues and will constitute a waiver of a party's right to appellate review of the findings of

fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.


DATED this _5_ day of June, 2009.

MARK D. CLARKE

United States Magistrate Judge

Report & Recommendation 26